IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**JOHN R. ZSIGRAY,**

      Plaintiff,

v.                                                  **Civil Action No. 2:16-CV-64
(BAILEY)**

**COUNTY COMMISSION
OF LEWIS COUNTY, WEST VIRGINIA,
LEWIS COUNTY SHERIFF'S DEPARTMENT, and
JAMES H. McATEE,**

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

Currently pending before this Court is Defendants County Commission of Lewis County, Lewis County Sheriff's Department, and James H. McAtee's (collectively "defendants") Motion to Dismiss [Doc. 3], filed on December 23, 2016. Plaintiff John R. Zsigray filed a Response in Opposition to the Motion to Dismiss [Doc. 6] on January 13, 2017. Defendants then filed their Reply [Doc. 7] on January 20, 2017. For the reasons set forth below, this Court **GRANTS** defendants' Motion to Dismiss.

**I. BACKGROUND**:

Plaintiff filed the instant Complaint before this Court on July 22, 2016, alleging violations of constitutional rights secured under the Fourth and Fourteen Amendments pursuant to 42 U.S.C. § 1983 [Doc. 1 at ¶ 5]. In his Complaint, plaintiff alleges that on July

19, 2014,[1] he entered the Lewis County Magistrate Court Building to inquire about a "matter of public knowledge and interest that he was involved in" [Id. at ¶ 7]. Upon entering the security area and passing through metal detectors, a knife was found on his person [Id. at ¶ 8].[2] As the plaintiff entered the courthouse around lunchtime, he "could tell" that court personnel were attempting to close up for lunch, yet he entered the "area of the courthouse containing the Magistrate Clerk's office and inquired about the case" [Id. at ¶ 9].

At some point after his visit to the Magistrate Clerk's office, plaintiff attempted to exit the courthouse while continuing to "discuss the matter" with court personnel [Id. at ¶ 10]. Plaintiff claims that during the course of this exit, defendant McAtee, who was working security at the courthouse, grabbed plaintiff and pushed him against the wall whilst verbally berating him; he then claims that defendant McAtee physically escorted him out of the building "in front of numerous court officials and persons in the public" [Id. at ¶ 11]. Plaintiff claims that he did not threaten the officials, nor did he gesticulate or otherwise behave agressively [Id. at ¶ 10]. He also contends that, "[t]he entirety of the incident was caught on video and there is no evidence whatsoever of any agitation or fear on the part of any court employee" [Id.].[3]

---

[1] This Court notes that the video evidence [Docs. 4-2 - 4-6] indicate that the encounter took place on June 19, 2014, not July 19, per the labels on the upper left hand corners of the screen.

[2] This Court notes that plaintiff does not allege or otherwise describe what happened to the "small pocket knife," which he was, "lawfully entitled to carry."

[3] In their Motion to Dismiss, defendants argue that the, ". . . Complaint makes multiple references to video footage of the incident and, in effect, makes the video part of the Complaint" [Doc. 4 at 2]. As set forth more thoroughly below, this Court agrees, as

Plaintiff then alleges that he made numerous inquiries about the incident to local officials, which eventually resulted in an Obstruction charge that was subsequently dismissed on April 1, 2015 [Doc. 1 at ¶ 12]. He was also "later arrested for Assault on an Officer" [Id.].[4] Plaintiff entered into a pre-trial diversion agreement and this charge was officially dismissed on April 6, 2016 [Id.]. Plaintiff then sets forth a claim of Battery and Assault, and a Violation of 42 U.S.C § 1983 ("§ 1983 claim") claim for purported violations of his Fourth and Fourteenth Amendment rights [Doc. 1 at ¶¶ 17-25].

In their Motion to Dismiss, defendants assert that the Complaint was not timely served, and also fails to state a claim upon which relief can be granted [Doc. 4 at 3]. Furthermore, defendants contend that they are entitled to statutory and qualified immunity as to plaintiff's claims [Id.]. In his Response, plaintiff contends that his claims are properly alleged and that the Motion to Dismiss must be denied [Doc. 6]. Defendants reiterate nearly all of the arguments raised in their Motion to Dismiss again in their Reply [Doc. 7]. The validity of those arguments is discussed below.

## II. **LEGAL STANDARD**:

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008).

---

plaintiff relies heavily on the video tape of the incident in paragraphs 10 and 11 of the Complaint. Of note, those two paragraphs comprise nearly all of plaintiff's substantive basis for relief.

[4] This Court notes that plaintiff does not set forth the basis or factual background for the "Assault on an Officer" arrest in the Complaint, nor does he otherwise detail in any way why this arrest was unlawful.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," **Id**. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." **Id**. at 1974.

### III. DISCUSSION:

This Court will consider defendants' arguments as to the individual defendants below.

A.  Plaintiff's Claims Against the Lewis County Sheriff's Department Are Dismissed as The Lewis County Sheriff's Department is Not a Suable Entity:

Defendants correctly argue that the Lewis County Sheriff's Department is not a proper party to this case as it is not a separate suable entity from Lewis County.[5] It is well

---

[5] This Court notes that plaintiff does not contest or otherwise address this point in his Response [Doc. 6].

established that a local governing body may be sued for monetary, declaratory, or injunctive relief for alleged constitutional violations pursuant to 42 U.S.C. § 1983. ***Monell v. Department of Social Services***, 436 U.S. 658, 690 (1978). However, "under West Virginia law, the local governing body for a county within the state is the county commission/council." ***Pulse v. Layne***, 2013 WL 142875 at *4 (N.D. W.Va., Jan. 11, 2013) (Groh, J.) (citing W.Va. Code § 7–1–1). Article I of Chapter 7 of the West Virginia Code provides, in relevant part:

> "The county [commission/council] . . . of every county within the State of West Virginia shall be a corporation by the name of . . . 'The County [Commission/Council] of County,' by which name it may sue or be sued, plead and be impleaded and contract and be contracted with."

***Id.*** (citing W.Va. Code § 7–1–1(a)). As such, while West Virginia law authorizes suits against a county commission/council, it does not contain any similar provision for county sheriff's offices. Therefore, while plaintiff may sue the County Commission of Lewis County, he may not sue the Lewis County Sheriff's Office. *See* ***Rankin v. Berkeley County Sheriff's Dep't***, 222 F.Supp.2d 802, 807 (N.D. W.Va., Sept. 19, 2002) (Broadwater, J.) (holding that the Berkeley County, WV, Sheriff's Department is not a cognizable legal entity). Accordingly, all claims which plaintiff alleges against the Lewis County Sheriff's Department are hereby dismissed.

B.  Plaintiff's Fourteenth Amendment Substantive Due Process Claim is Improperly Pled and Must Be Dismissed:

In the Complaint, plaintiff alleges that, "this action is brought against the Defendant pursuant to 42 U.S.C. § 1983 for the deprivation of civil rights secured by the Fourth and Fourteenth Amendments to the United States Constitution" [Doc. 1 at ¶ 21]. However, as the Supreme Court held in ***Graham v. Connor***, 490 U.S. 386, 395 (1989), ". . . all claims that law

enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Accordingly, insofar as plaintiff's Fourteenth Amendment claim is made under a "substantive due process" approach, the same is dismissed. This Court will consider plaintiff's remaining Fourth Amendment claims below.

C.  Claims Against Defendant James H. McAtee Must Also Be Dismissed:

    **i.** **This Court Will Consider the Videotape of the Incident Which Was Incorporated by Reference into the Complaint:**

Before considering plaintiff's claims as to defendant McAtee, this Court must address whether it may consider the video evidence which is integral to plaintiff's Complaint and this matter writ large. As noted above, in their Motion to Dismiss, defendants argue that the, ". . . Complaint makes multiple references to video footage of the incident and, in effect, makes the video part of the Complaint" [Doc. 4 at 2]. This Court agrees, as plaintiff relies heavily on the video tape of the incident in paragraphs 10 and 11 of the Complaint. In those paragraphs, plaintiff represents:

> "10. The Plaintiff was exiting the Courthouse and was discussing the matter with the court officials. **Despite statements to the contrary by several court employees, the videotape of the incident revealed the Plaintiff appeared to make no threats to the officials[,] nor did he make any threatening remarks.** He was not armed. He did not gesticulate in any way or was aggressive in any way. **The entirety of the incident was caught on video and there is no evidence whatsoever of any agitation of fear on the part of any court employee. In fact, the Plaintiff simply appeared to**

> **be having a polite discussion with employees and then followed them out of the area as the employees were all going to lunch.**
>
> 11. **As the video reveals, as the Plaintiff proceeded to walk out of the courthouse in a calm manner — not arguing, not gesticulating, not walking at a fast gate — the Plaintiff was rushed by Defendant MCATEE and was grabbed and shoved up against the wall.** Thereafter, the Plaintiff was berated buy [sic] Defendant MCATEE and was physically escorted out of the building in front of numerous court officials and persons in the public. **All of this incident was caught on video tape. The videotape shows no aggression by the Plaintiff – who was unarmed – towards the Defendant MCATEE, and does not indicate any verifiable reason for Defendant MCATEE to physically batter and assault the Plaintiff.** The Plaintiff was not engaged in any illegal activity nor did he represent any threat to public safety."

[Doc. 1 at ¶¶ 10-11; emphasis added]. This Court believes that plaintiff's reliance upon the videotape in these paragraphs, which provides almost all of the plaintiff's substantive basis for his claims, effectively incorporates the video tape of the incident into the Complaint.[6]

Applicable case law indicates that this Court may consider such evidence in order to fully analyze the efficacy of claims alleged in a given complaint. "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." ***E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.***, 637 F.3d 435, 448 (4th Cir. 2011). Even if this Court did not determine that the video was effectively incorporated into the Complaint, the Fourth Circuit has also held that a court may consider evidence outside of the complaint, " . . . in determining whether to dismiss the complaint because [that evidence] was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity." ***Phillips v. LCI Int'l Inc.***, 190 F.3d 609, 618 (4th Cir. 1999). Accordingly this

---

[6] This Court notes that defendants provided four frames of the video to this Court as Exhibit 2 to their Motion to Dismiss [Docs. 4-2 through 4-5].

Court will consider the video evidence as part of the disposition of the instant Motion to Dismiss.

### ii. Analysis of the Video Evidence as it Pertains to Defendant McAtee:

This Court has carefully analyzed the video evidence which was incorporated into the Complaint, and finds that it varies significantly from that which plaintiff describes. The video simply does not show that, "[p]laintiff was rushed by [d]efendant McAtee and was grabbed and shoved up against the wall [by him]" [Doc. 1 at ¶ 11]. First, Exhibit 4-2, which is a video from inside of the Courthouse, shows plaintiff presumably leaving the Lewis County Magistrate Clerk's office at 12:02:28 on June 19, 2014. Plaintiff is seen wearing a bandana on his head and sleeveless t-shirt. Plaintiff approaches the security gate between 12:02:28 and 12:02:45, then crosses through the gate. Between 12:02:46 through 12:03:00, plaintiff can be seen standing in front of the security area while speaking with defendant McAtee. The parties are separated by a security barrier throughout that time.

When Exhibit 4-3 picks up at 12:03:00, plaintiff can still be seen speaking with defendant McAtee. At 12:03:11, defendant McAtee rises from his seat in the security area, and he walks around the X-Ray machine towards the entrance between 12:03:12 and 12:03:21. Exhibit 4-3 becomes unclear as to the parties at this point, yet Exhibit 4-4 picks up the next part of the encounter and shows the exterior of the Courthouse.

At 12:03:18, plaintiff clearly opens the exit door and begins walking on the sidewalk in front of the building towards the street. Plaintiff does not seem in distress, and does not exhibit any semblance of the demeanor that would be expected of someone who was just pushed up against a wall and verbally berated. Defendant McAtee does not emerge from

the courthouse until 12:03:21, and is clearly several steps behind the plaintiff. Plaintiff then continues to walk up the sidewalk towards the street between 12:03:18 and 12:03:32. Defendant McAtee follows him at a several step distance between 12:03:22 and 12:03:32, but turns back towards the Courthouse once plaintiff reaches the end of the sidewalk.

Exhibit 4-5 shows the exterior of the Courthouse from the other angle, and shows plaintiff turn back towards the Courthouse at 12:03:34. He then appears to gesticulate and says something to defendant McAtee after McAtee walks back inside. Plaintiff crosses the street in front of a car at 12:03:53, and he does not reappear in any of the videos after that time.

As such, while portions of the video show plaintiff walking by defendant McAtee and speaking with him, the two never have any semblance of a physical altercation, contrary to what is alleged in the Complaint. Indeed, the video does not even show that defendant McAtee came within a foot of plaintiff at any time during the course of their interaction. Instead, the video shows defendant McAtee standing up and approaching the door where plaintiff was standing. Contrary to the video description that is made part of the Complaint, the next frame of the video shows plaintiff exiting the courthouse whilst defendant McAtee briefly follows the plaintiff as he walks away untouched. McAtee clearly did not make any physical contact with the Plaintiff as he was walking away from the courthouse. As such, this Court will now analyze whether defendant McAtee is entitled to Qualified Immunity as to plaintiff's federal claims and Statutory Immunity as to plaintiff's state law claims.

    **iii.**     **Defendant McAtee is Entitled to Qualified Immunity as to Plaintiff's § 1983 Claims**:

In their Motion to Dismiss, defendants next contend that defendant McAtee is entitled to qualified immunity from plaintiff's §1983 claims. In his Response, plaintiff argues that, ". . . the issue here is reasonably well-trained security officer [sic] in petitioner's [sic] position would have known that his actions were appropriate under the circumstances. Assaulting an individual who was without a weapon and on video made no gesticulations or threats of force, the [p]laintiff would argue, is not objectively reasonable or appropriate" [Doc. 6 at 3]. This Court disagrees.

It is clear that per established standards regarding qualified immunity, defendant McAtee is entitled to qualified immunity regarding plaintiff's Fourth Amendment claims. ". . . [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Wilson v. Layne**, 526 U.S. 603, 609 (1999) (*citing* **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982). "Qualified immunity exists to protect officers in the performance of their duties unless they are 'plainly incompetent' or they 'knowingly violate the law.'" **Doe v. Broderick,** 225 F.3d 440, 446 (4th Cir. 2000) (*citing* **Malley v. Briggs**, 475 U.S. 335, 341 (1986)). In ruling on an issue of qualified immunity, a court should consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" **Saucier v. Katz,** 533 U.S. 194, 201 (2001); *accord* **Pearson v. Callahan**, 555 U.S. 223, 234-243 (2009) (holding that in resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out a violation of a constitutional right; instead, the **Saucier** two step analysis is no longer mandatory, but

is instead "often beneficial" to utilize in resolving qualified immunity questions). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. ***Id.*** If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. ***Id.***

With that in mind, it is clear that defendant McAtee is entitled to qualified immunity because his conduct during his encounter with plaintiff did not "transgress bright line rules" nor did it "violate clearly established law." ***Pearson***, 555 U.S. at 244. In removing the plaintiff from the Courthouse, the video evidence shows that defendant McAtee did not touch the plaintiff, let alone violate plaintiff's constitutional rights. The video tape does not show the sort of shove into a wall nor the verbal dressing down described by the plaintiff. Instead, defendant McAtee followed behind plaintiff at a safe distance until he left the Courthouse. This conduct does not come within miles of the sort necessary to remove defendant McAtee's entitlement to qualified immunity from plaintiff's § 1983 claims. Accordingly, for the reasons set forth above, defendant McAtee is entitled to qualified immunity as to plaintiff's § 1983 claims.

### iv. **Defendant McAtee is Entitled to Statutory Immunity from Plaintiff's State Law Claims:**

The Plaintiff alleges that Defendant McAtee committed common law assault and battery by shoving him against a wall and abruptly escorting him out of the courthouse.

West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless (1) his or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) his or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless

manner; or (3) liability is expressly imposed upon the employee by a provision of this code.

Plaintiff admits in his Complaint that defendant McAtee was acting within the scope of his employment with "the other named DEFENDANTS." *See* Complaint, ¶ 18. Even viewing the allegations in the Complaint in a light most favorable to the plaintiff, the allegations fall short of demonstrating that McAtee's actions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

As the West Virginia Supreme Court of Appeals noted in ***City of Saint Albans v. Botkins***, 228 W. Va. 393, 398 (2011), "[West Virginia's] approach to matters concerning immunity historically has followed federal law." Consequently, much of the same analysis applicable to defendant McAtee's invocation of qualified immunity against plaintiff's § 1983 claims applies with equal force to his invocation of statutory immunity against the state law claims. Accordingly, for the reasons set forth in the section above, defendant McAtee is also entitled to statutory immunity from plaintiff's state law claims pursuant to West Virginia Code § 29-12A- 5(b).

D.      Plaintiff's Claims against the Lewis County Commission Must Also Be Dismissed:

Plaintiff's Complaint fails to plead sufficient facts to sustain a § 1983 claim against the Lewis County Commission. The County may not be held vicariously liable for the alleged constitutional violations perpetrated by defendant McAtee. Political subdivisions are only liable for their own constitutional torts. ***Monell,*** 436 U.S. at 694 (1978). In order to show that a governmental entity caused a constitutional deprivation, plaintiff must prove that the deprivation was directly caused by, or resulted from, the execution of an official policy or custom instituted by the government itself. ***Id.*** The plaintiff must "demonstrate

manner; or (3) liability is expressly imposed upon the employee by a provision of this code.

Plaintiff admits in his Complaint that defendant McAtee was acting within the scope of his employment with "the other named DEFENDANTS." *See* Complaint, ¶ 18. Even viewing the allegations in the Complaint in a light most favorable to the plaintiff, the allegations fall short of demonstrating that McAtee's actions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

As the West Virginia Supreme Court of Appeals noted in ***City of Saint Albans v. Botkins***, 228 W. Va. 393, 398 (2011), "[West Virginia's] approach to matters concerning immunity historically has followed federal law." Consequently, much of the same analysis applicable to defendant McAtee's invocation of qualified immunity against plaintiff's § 1983 claims applies with equal force to his invocation of statutory immunity against the state law claims. Accordingly, for the reasons set forth in the section above, defendant McAtee is also entitled to statutory immunity from plaintiff's state law claims pursuant to West Virginia Code § 29-12A- 5(b).

D.      Plaintiff's Claims against the Lewis County Commission Must Also Be Dismissed:

Plaintiff's Complaint fails to plead sufficient facts to sustain a § 1983 claim against the Lewis County Commission. The County may not be held vicariously liable for the alleged constitutional violations perpetrated by defendant McAtee. Political subdivisions are only liable for their own constitutional torts. ***Monell,*** 436 U.S. at 694 (1978). In order to show that a governmental entity caused a constitutional deprivation, plaintiff must prove that the deprivation was directly caused by, or resulted from, the execution of an official policy or custom instituted by the government itself. ***Id.*** The plaintiff must "demonstrate

manner; or (3) liability is expressly imposed upon the employee by a provision of this code.

Plaintiff admits in his Complaint that defendant McAtee was acting within the scope of his employment with "the other named DEFENDANTS." *See* Complaint, ¶ 18. Even viewing the allegations in the Complaint in a light most favorable to the plaintiff, the allegations fall short of demonstrating that McAtee's actions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

As the West Virginia Supreme Court of Appeals noted in ***City of Saint Albans v. Botkins***, 228 W. Va. 393, 398 (2011), "[West Virginia's] approach to matters concerning immunity historically has followed federal law." Consequently, much of the same analysis applicable to defendant McAtee's invocation of qualified immunity against plaintiff's § 1983 claims applies with equal force to his invocation of statutory immunity against the state law claims. Accordingly, for the reasons set forth in the section above, defendant McAtee is also entitled to statutory immunity from plaintiff's state law claims pursuant to West Virginia Code § 29-12A- 5(b).

D.      Plaintiff's Claims against the Lewis County Commission Must Also Be Dismissed:

Plaintiff's Complaint fails to plead sufficient facts to sustain a § 1983 claim against the Lewis County Commission. The County may not be held vicariously liable for the alleged constitutional violations perpetrated by defendant McAtee. Political subdivisions are only liable for their own constitutional torts. ***Monell,*** 436 U.S. at 694 (1978). In order to show that a governmental entity caused a constitutional deprivation, plaintiff must prove that the deprivation was directly caused by, or resulted from, the execution of an official policy or custom instituted by the government itself. ***Id.*** The plaintiff must "demonstrate

that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." **Board of County Com'rs of Bryan County, OK. v. Brown**, 520 U.S. 397, 404 (1997) (emphasis supplied).

"A policy or custom for which a municipality or county may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." **Lytle v. Doyle**, 326 F.3d 463, 471 (4th Cir. 2003). Persistent and widespread practices may be attributed to a local government when the duration and frequency of the practices rises to a level such that the governing body may be deemed to have constructive knowledge that the practices have become customary amongst its employees. **Spell v. McDaniel**, 824 F.2d 1380, 1387 (4th Cir. 1987). "Constructive knowledge may be evidenced by the fact that the practices have become so widespread and flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." **Id.**

As an initial matter, plaintiff's **Monell** claim against the County lacks merit as he failed to prove that defendant McAtee violated his constitutional rights in the first place, as noted above. Even if plaintiff had properly alleged or proved that his constitutional rights were violated, he has failed to present any evidence that the County, through its deliberate conduct, was the "moving force" behind any such violation. Plaintiff merely alleges that

the County "had a duty to ensure that the Lewis County Sheriff's Department had adequate policies to protect the public within the Lewis County Buildings." [Doc. 1 at ¶ 24]. However, even if this allegation is taken as true for the purposes of this motion, this allegation is not sufficient to establish that the County's policies proximately caused a constitutional violation in order to sustain a *Monell* claim against the County. Accordingly, plaintiff's claims against the Lewis County Commission must also be dismissed.

### IV.  CONCLUSION:

In conclusion, and for the reasons stated more fully above, this Court finds that defendants' **Motion to Dismiss [Doc. 3]** is **GRANTED**, and plaintiff's **Complaint [Doc. 1]** is hereby **ORDERED DISMISSED**. This matter is hereby **ORDERED STRICKEN** from this Court's active docket, and the Clerk is directed to enter judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED:**  February 2, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE